in his official capacity as Secretary, U.S. Department of Agriculture, and John F. Carey in his official capacity as Secretary of State. Ms. Krueger for the Appellant, Mr. Tate for the Appellate. Good morning, Your Honors.  In support, I'm Susan Krueger, and I represent the Appellant in this action, Mohamed Tawhid Al-Saffy. Good morning. First, I'm going to talk about the issues involved with his complaints against the Department of Agriculture. The issue is – well, let me go back. Dr. Al-Saffy filed a complaint against the Department of Agriculture in 2011. This was an administrative EEO complaint alleging discrimination. He also filed a complaint against the Department of Agriculture in 2012. Again, an administrative EEO complaint alleging discrimination. In the spring of 2013, Dr. Al-Saffy requested that his request for hearings before an administrative judge be withdrawn so that he could file a complaint in federal court. And in April 2013, the EEOC judges issued orders responding to his request. Dr. Al-Saffy filed his complaint in federal court in October 2013. Let me ask you about the two orders. You treat them as the same in your brief, the two orders. The one by Brown, which was – with respect to the second complaint, right? And Collazo, which was the third complaint. Right. There is – But there is a big difference, isn't there? Well, okay, just first of all, to be clear, the 2009 complaint, we're not arguing about that. That was just put in his federal court record. I was just talking about the second and third. Okay, so the second – By Brown and Collazo. Right. Now, they're different, aren't they? Well, they're both responses to his request to withdraw his request for a hearing. Yeah, but I'm looking at the language of the orders. They're different because Brown dismissed only the hearing request, which is not covered by 110A, whereas Collazo dismissed the case, which is a 110A action, right? Well – Isn't that a big difference in terms of whether or not they can ripen into final agency – in fact, whether they can ripen into final agency action? Well, I don't think there is – I don't think there is a difference. I mean, I understand what you're saying. Well, look at the language of 110A. Right, so – 110A has three circumstances. One is dismissing the complaint, and the other two don't even apply here. So in the third complaint, it was dismissed. In the first, it wasn't dismissed. So in the third complaint, isn't the department right that because the judge dismissed the complaint, that it – under that – under 110A, it ripened into final agency action, and the plaintiff's complaint was statutorily weak? Well, again, what these – what 110A – 110A is entitled, final action by an agency following a decision by an administrative judge. There's no decision here as such. No, but it says – yeah, final action by an agency by a judge. But then it says – but then it describes what those final – what those decisions by the judge are, right? It lists three things. Well, it says – it talks about issuing a decision under 1614.109BG or I. So – Well, yeah, I think that in terms of B, that 109B dismissals, that that is more for, you know, maybe a procedural dismissal. The judge makes a decision to do this. This was – this is sort of the opposite. This is – Dr. Alsafi is saying, I don't want – I don't want to have a hearing before an administrative judge. I want to take it out of that process. What I was wondering is what Judge Collazo did was dismiss the case, not the complaint, which is what 110 and 109 refer to as dispositions of complaints which are filed with agencies. And I was trying to figure out whether case there meant just the case before the ALJ, so it's like the dismissal of the hearing in the other order, or does case in practice mean the same as the complaint or whole case before the agency? And so I'm just very confused about the use of the word case there, given the – given that the order also references the attached letter, which was only talking about dismissing a hearing. Right, Your Honor. These – I mean, to me, these orders are pretty much the same because they are basically responding to Dr. Alsafi's request to not have a hearing before an administrative judge. Both of these cases – Well, they're responding to that, but as Judge Hittle pointed out, the wording is very different. The Judge Brown order not only says – has the narrow language of saying the hearing request is dismissed, but also then says – essentially kicks it back to the agency, and the agency is going to do a final decision. We don't have that here. And on first blush, a case is dismissed sounds like the end of the whole proceeding. But maybe not. Maybe in the specialized area, which you need under 109 and 110 is dismissal of the complaint before the agency. So what do I do with this word case combined with the fact that it expressly incorporates the letter, which only talked about a hearing dismissal? What do we do? Was that enough to at least put you on notice that you needed to do something? Well, I don't think it was unless it came with some sort of notification of what the timelines were. Neither of these orders came with any kind of notification. And this is – Well, that might be an equitable tolling argument, but we're trying to just figure out what the legally operative effect of this order is, which, again, as Judge Hittle said, is different than the Judge Brown order. And we need to figure out whether it's different enough, given the nature of the language. Was this – I mean, Mr. Altshelfie was represented by you all at the time. Yes. So it's not like he was pro se. That's correct. And so surely lawyers appreciated that these things were worded. Although your letters requesting dismissal of hearing were identical, the orders issued were not. Was that not enough to put you on notice, as in like the Melson case, where you had to do something to then preserve your rights if you thought this dismissal order had overreached? Well, it doesn't say that the case was dismissed with prejudice. It just says the case is dismissed and pursuant to the attached letter, which requested that the hearing be dismissed. So, in other words, it's – Well, in practice before – I just want to understand. What does case mean? For judges, case means one thing. Right. But in this area, does case mean the whole dispute with the agency, or do you refer to the ALJ proceeding as a case versus an agency case? I just don't know what that word means and where it came from. No. So the case – I believe case here means the complaint that was filed with the agency requesting – and Dr. Alsafi's initial request for a hearing before an administrative judge. So he wasn't – he didn't want to dismiss this. It wasn't like he was withdrawing his complaint, which would have been something different. He was just withdrawing his request for a hearing. And so you read case as meaning just the case before the ALJ? Right. Just – what happened in this complaint was that he had received his report of investigation and – well, no, actually no. What happened was that the agency had this case for something like more than 180 – and they did not. And so instead of requesting – so what he was doing was he was withdrawing his request for the hearing before an administrative judge saying, you know, I'm going to be filing in federal court. Okay.  We'll hear from the government. Thank you. Thank you, Your Honor. May it please the Court. Damon Tate for the U.S. Attorney's Office representing defendant agencies, USDA, and the State Department. Picking up where the Court left off, I would say more broadly that we understand that there are some difficult issues here. We recognize that there are some cases that go against us. What our position has always been flows directly from what we understand the language of the regulation to be, as well as the district court's holdings in the Wiley case and the Nelson case. And this Court's affirmation – Nelson didn't deal with a situation in which the agency was required to give notice. It did not address that issue. That's the problem you have on the 2012 complaint. Let me just tell you my issues. In the 2011 complaint, there isn't any final agency action. The agency isn't doing anything here. The agency shall issue a final decision. I simply left – there it is. That's not final agency action. The problem in 2012, from my perspective, is you are required to give notice. You didn't give notice. Williams and other cases in the circuit make it very clear statute of limitations does not begin to run. Not equitable tolling. Statute of limitations does not begin to run until you give that notice. At least for me, I need to hear answers to those questions. If I could just ask a follow-up question. In what respect is Nelson dissimilar? Nelson doesn't address the question where an agency is required to give notice. There are cases in our circuit that say where an agency is required to give notice, statute doesn't begin to run if they haven't given notice. And they cited a district court case which cites to our case law on that point, so they didn't waive it. They raised that question, and it's different from the equitable estoppel argument. So that put it in play. And on the first one, I simply don't see any final agency action. So nothing began to run as far as I'm concerned, so that you understand what's bothering me. I understand both of Your Honor's points. Let me try to respond to them. With respect to the Wilson v. Pena case and Williams, the other cases that Your Honor was referring to, that is broad language. We admit that there was not. You admit you've got a problem. Yes, we admit we have a problem as far as that goes. I would point out one distinguishing factor that may or may not convince Your Honor. Excuse me. In the Wilson case, that was substantially different than the facts we have here. That came out in effect. The dismissal order there happened in a gap between an iteration of the statute that lengthened the period for filing and the period when the agency's regulations caught up to that statute. So the court actually said in that case that the holding here is limited to this particular window of cases, the one-year period in which the agency's forms were actually actively apprising a litigant of an incorrect filing period, which is different from what we have here. Here we have arguably not communicating any filing period. There it is somewhat different because they're being told something that's incorrect. It's sort of a difference between being misled and not being informed, I suppose. But that is broad language that if taken to apply here. It was not applied in Nelson. I think if this court had applied it in Nelson, that case would have had to come out differently. Well, Nelson didn't address it, so we don't even know if it was raised. That's correct. Nelson counts for nothing. It just doesn't tell us anything about the situation, nothing, because you have a clear requirement to give notice here. And the case law in the circuit says when you have a clear requirement to give notice, the statute of limitations doesn't start to run if you haven't given it. Nelson doesn't address it. I believe that the Wiley case may, Your Honor, at least that it was raised there. That's a decision by Judge Colaricatelli some years ago. But if the language there, in that case that you're talking about, the Wilson case, in that case there was no active withdrawal from the processes as there was here. And that's been something that many courts have found to be important. And that's the best I think I can do in distinguishing that case. You may or may not be able to do that. Then go on and respond to Judge Edwards' point about the second complaint. I mean, you don't need any cases on that, right? That's just a question of the one that was dismissed by Brown. You don't even need to look at cases for that, right? Because the judge dismissed the hearing request, not the complaint. And then she cited 110B, not 110A. So it couldn't ripen into final agency action. Correct. Acknowledging Your Honor's point, that's not a point that plaintiff has ever raised in this case. Both parties as well as the district court treated these as synonymous dismissal orders as well as synonymous requests for dismissal. But beyond that, I think— What's your response to it on the merits? I take your point about that. The Blue Brief does treat the two of them as the same. But beyond that, what's your response on the merits? That is, to the interpretation of 110A and B here. Would you—let me ask you this way. Would you agree that if we thought it was raised properly that they would prevail on that argument? Under 110B rather than 110A? Yeah, I'm talking about Brown. The second complaint was dismissed. She dismissed the hearing request. And that's not one of the actions listed in 110A. And so—and she cited 110B, so it couldn't ripen into final agency action, so it's not late. Your Honor may be right on that point. It's not something that we've considered. I would point out—this is not directly responsive, but I would just point out an interesting fact about this dismissal, which is it says, the notice that a civil action has been filed in this matter, the agency shall issue dot, dot, dot. So it can't possibly be that this notice is construed as causing somebody to wait for something to happen. That is, an order to be issued, because the order itself expressly contemplates that a civil action could be filed before final agency action. No, but the dot, dot, dot's important, what you left out. The agency shall issue a final—shall issue a final decision in accordance with the procedures in 110B. You see, the problem is, if we write—rewrite a decision of the sort that you're asking for, you're conflating A and B, and they're very different. And as Judge Taylor's raising the question of the 2011 complaint, there isn't any final agency action here, and you can't look at it as if it's A because the hearing officer cites B. You know, I—Your Honor has a point here. It's not something that we've been litigating throughout this, so I haven't focused on the difference between A and B maybe as well as I had if we had been litigating this all the way through, but I don't know of any reason, as I stand here, that Your Honor's incorrect on that point. Okay. Thank you. I just have two questions about the State Department complaint. Two quick questions. Yes. One is, the department's position is that he should have been alerted, the plaintiff should have been alerted by the ROI, right, about these affidavits? In our view, it would have been within the expected scope of an investigation into a reassignment. Why the reassignment occurred seems naturally— I mean, we don't know whether those affidavits were actually attached, do we? I don't think they were. Well, but how do you know? Is it in the record? Is the ROI in the record? The ROI is—I do not believe the affidavits in question were part of the ROI because they were submitted in part pursuant to a summary judgment motion in the USDA case. But you're—yeah. Right, so it's not in the record here. And also, it says—it says the State Department's—the State Department's final decision on this issue, dismissing the case, says presumably these affidavits would have been included in the report. It just says presumably. Well, I think the language in— So we really don't know whether these affidavits— Well, but under the exhaustion test— How could you grant summary judgment, particularly since we're supposed to, you know, interpret disputed issues in plaintiff's favor in summary judgment? So how could summary judgment possibly be appropriate under those circumstances? Well, I think the bigger problem, Your Honor—I will respond to that, but first to note what we believe the bigger problem to be is that 42 U.S.C. 2000 E-16A requires, under McDonnell-Douglas, you have to have an adverse action. And in this case, the adverse action was taken by one entity. That was USDA. You can't have the same adverse action taken by two different agencies. And here, there was a complaint filed against USDA for this very adverse action, that is the reassignment of the Yemen duty portfolio. And then during that litigation, there were affidavits submitted explaining why it happened, what was the nature of the reason for the reassignment. And so, yes, there were certain state employees who believed that plaintiff was not fitting in well there. And based on what their views were, that is the state employee's views, USDA took an adverse action, which is reassigning the duty portfolio. But state never took that adverse action. If anything— Well, how do you know that from this record? This is sonic judgment. They—well, let me ask you this. Do you think that—suppose there was evidence that, under this statute, that you cited—the government cited in the district court, but not here, the chief of mission statute, which sort of gives the ambassador control over other agencies operating in the embassy. I mean, suppose the evidence showed that the ambassador or someone on the ambassador's staff actually did control the work of this particular employee. Well, the evidence in the record here— Even though the employee technically worked for the Agriculture Department. Well, the evidence in the record here, Your Honor, suggests the contrary of that. But suppose it did. Would you concede then that state could be a proper defendant? I don't think I would, Your Honor, because the State Department literally, I don't believe, had the authority to assign a duty portfolio to the plaintiff. The state didn't employ the plaintiff. And what I was going to mention to Your Honor, a record at Joint Appendix 107, this is— in 109 is a letter to the ambassador, 107 is an identical letter to somebody else there. But this letter is written by USDA, and it explains to the relevant State Department employees who the plaintiff is and what he will be doing when he's there. It says that he will be the director of the Agricultural Trade Office, and it says as director of that office, he will coordinate DOA policies and activities in Saudi Arabia with regional responsibilities for Yemen. He will work to broaden access for certain products and developments. And then it says he will report directly to you so that you will be fully informed of his activities. And then it says, I think he'll be a valuable member of your staff. This is something where the USDA is explaining to State, here's the guy we're sending you. Here's what he's going to do. He's going to keep you in the loop. But this, from the beginning and through the end, has been USDA controlling its employees. The last sentence you just said is he'll be a valuable member of your staff. Yeah, so he'll be in your office, but the duties are being assigned by your staff. Not in your office, but your staff. And given the ambassador in a country doesn't like someone who's working there, my bet is that the USDA doesn't get to say they stay anyhow. Or at least, again, this is a disputed fact in the record, is it not? I'm not sure it's disputed. In a complaint in this case, he said that the USDA reassigned him. The USDA transferred him. So that is the adverse action. In the district court, they cited a statute involving the chief of mission, which gives the chief of mission, the State Department, full responsibility for the direction and coordination of all government executive employees. That's in the district court record. If Your Honor is right about that, though, then I think the USDA complaint is no good. Because there's only one adverse action here. There's one reassignment. And either that action was taken by the State Department or it was taken by USDA. Again, that may be exactly the disputed fact that needs to be resolved here, and that's why there's two complaints. He wants to protect himself either way and make sure at the end of the day he's got the responsible employer in this unusual and complicated situation. We never move to dismiss on that. There's no controversy as to whether USDA is responsible for the action that happened. They're not suggesting otherwise, and we're not suggesting otherwise. They simply filed a second complaint alleging the same constellation of facts that they alleged in the first one. And the second one was against an agency that never employed the plaintiff. This is what Section 107 addresses when they say that it's filing a claim alleging the same facts. That's why it was dismissed, and so I think I've said about as much as I can on the subject. Okay, thank you. Thank you. I think, let's see. Did Ms. Kruger have any time? Ms. Kruger had 30 seconds remaining. Ah, okay. You can take your 30 seconds plus an extra minute if you like. All right, I'm going to try and quickly address some of these things that were discussed. First of all, the complaint against state. What Dr. Alsafi is saying is that these State Department employees did have control over the decision to terminate him, and he did not learn about this, and he did not know to what extent they were participating in the decision to terminate him as ATO of Yemen until he received these affidavits that were produced in support of a motion for summary judgment in which they basically state that they had discussions with the Department of Agriculture employees and recommended his dismissal. So there's no question that the State Department had control over him, and in fact, these letters, the letters were addressed to the two ambassadors, Ambassador of Yemen and the Ambassador of Saudi Arabia, and both of the letters said the same thing about Dr. Alsafi being a member of their staffs and reporting directly to the ambassador, which is important because it shows the control of the ambassador. Okay. So, regarding the Department, I'm sorry. Finish your sentence, your time sentence. Okay, that's it. That's it? Okay, thank you. Thank you both. Case is submitted.
judges: Tatel, Millett, Edwards